## KING v. ARNOLD.

ASSIGNMENT: FRAUD: EVIDENCE CONSIDERED.

*Appeal from Jasper Circuit Court.*

TUESDAY, OCTOBER 21.

THE plaintiff claimed of the defendant Arnold about thirteen hundred dollars, balance on a note of about fifteen hundred dollars, and procured an attachment to be levied upon a lot of wheat, oats and barley, on the ground that Arnold had disposed of his property in part, with intent to defraud creditors. Johnston filed a petition of intervention claiming that he was the unqualified owner of the attached property. The cause was tried to the court, and judgment was rendered in favor of plaintiff against the intervenor. Johnston, the intervenor, appeals

*Ryan Bro's*, for the appellant.

*Smith & Wilson*, for the appellee.

DAY, J.—The intervenor claims that he purchased the attached property from the defendant Arnold on the 5th of November, 1878. The plaintiff claims that the sale to Johnston was fraudulent as to creditors. The only point urged is that the evidence does not support the finding of the court. We think the evidence does support the finding, or, at least, that the judgment of the court is not so opposed to the weight of evidence as to justify us in disturbing it. The cause is not triable *de novo*. The finding of the court is entitled to the same consideration as the verdict of a jury. A short time before the sale to intervenor the plaintiff went to see Arnold about the debt in suit. Arnold then told King that he would ship to him the rye, barley and oats, afterward sold to Johnston, to apply on the debt. At the same time Arnold made false statements to King as to his means and his liabilities. Arnold was engaged in buying grain. He was indebted at the time of the sale from $15,000 to $20,000. Johnston is Arnold's brother-in-law, and at the time of the purchase was comparatively without means. He knew that Arnold was involved, and that because of his embarrassments he was compelled to go out of business. The sale was made of all the grain in two elevators, one at Reasnor and one at Newton, at a lumping price of $1,400, for which Johnston gave two notes on short time, one for $500 and one for $900. After the attachment was levied, and before these notes were due, they were renewed on long time. Arnold assigned these notes as collateral security to relatives whom he owed. On the same day that this sale was made Arnold mortgaged nearly all of his property, mostly to his relatives, to secure them for sums which he owed them. There are many other circumstances in the case casting very great suspicion upon the *bona fides* of the sale to Johnston. From the whole evidence we cannot say that the finding of the court that the sale was fraudulent is not supported by the evidence.

AFFIRMED.